COPY

STATE OF MINNESOTA                     IN DISTRICT COURT

COUNTY OF DOUGLAS              SEVENTH JUDICIAL DISTRICT

Michael Ray Hansen,          )
                             )
            Petitioner,      )
                             )
     vs.                     )   **POST-CONVICTION RELIEF**
                             )   **HEARING**
State of Minnesota,          )
                             )   FILE NO. KX-04-1222
            Respondent.      )


TRANSCRIPT OF PROCEEDING

The above-entitled matter came on for hearing before the Honorable Peter M. Irvine, Judge of the District Court, in the Courthouse, in the City of Alexandria, County of Douglas and State of Minnesota, on the 16th day of May, 2011.


A P P E A R A N C E S

Ms. Bridget Kearns Sabo               FOR THE PETITIONER
Innocence Project of MN
1536 Hewitt Ave.
MS-D2205
St. Paul, MN   55104

Mr. Chad Larson                       FOR THE RESPONDENT
County Attorney.
Douglas County Courthouse
305 8th Ave. West
Alexandria, MN   56308


REPORTED BY LAVONNE J. RICHARDS - RMR,  CRR,  CPE

I N D E X

WITNESS:                                                    PAGE

**DR. MICHAEL McGEE**

Direct Examination by Mr. Larson                  4
Cross-Examination by Ms. Kearns Sabo             44
Redirect Examination by Mr. Larson               59

| EX. NO. | DESCRIPTION | MK'D | OFF'D | REC'D |
|---------|-------------|------|-------|-------|
| 14 | Dr. McGee's curriculum vitae | - - | 7 | 7 |

The following proceedings occurred, to-wit:.

THE COURT:  Case of State of Minnesota versus Michael Ray Hansen.  He is present.  Ms. Sabo is here on his behalf.  Mr. Larson is here for the State.  Today we are here to take some testimony from the State.

Mr. Larson, call your first witness.

MR. LARSON:  Thank you, Your Honor.  As a preliminary matter the Respondent waives the opportunity to present an opening statement and calls Dr. McGee.

THE COURT:  Dr. McGee.

DR. MICHAEL McGEE, a witness, called by the Respondent, being first duly sworn, testified on his oath, as follows:

THE COURT:  State your name and spell your last name, please.

THE WITNESS:  Michael B. McGee, M-C-G-E-E.

THE COURT:  Counsel.

BY MR. LARSON                           DIRECT EXAMINATION

Q.    Good morning, Doctor.

A.    Good morning.

Q.    Can you tell us what your occupation is?

A.    Medical examiner for Ramsey County,

remember, in poor, socio-economic families, although in our area, where we're at, I don't think that is really true.  It happens in all socio-economic areas.  Prior respiratory infection.  Those are some of the risk factors that some people believe can lead to sudden infants deaths, yes.

Q.    Let's talk about positional asphyxia.

A.    Sure.

Q.    Have you personally listed it as a cause of death?

A.    Oh, sure.

Q.    What is it?

A.    Positional asphyxia is when someone gets themselves, an adult or a person gets themselves into a position where they are not able to breathe or ventilate properly because of their position.  They usually end up dying of dying an asphyxial death, absence of oxygen, they're not able to breathe.  Generally when you see positional asphyxia occurs when someone is unable to breathe because of their position they're in and they're usually impaired because of unconsciousness, possibly seizure disorder, drug involvement, something that impairs them from being able to move and get out of that position.

Q.    And are there risk factors for

positional asphyxia?

A.    I think there are sure, yes.

Q.    What are they?

A.    Well, in an adult, adult risk factors would be does a person have a seizure disorder, and if so, do the seizures render him or her unconscious when they have a seizure?  Drugs on board.  Alcohol.  Prior history of loss of consciousness, all of these.  The condition where the subject may be at the time.  All of these can play a role or can be considered a risk factor for positional asphyxia.

Q.    How about in infants?

A.    Same thing is true.  Infants can have positional asphyxia if they are placed in a position where they're face down or if they are placed on something that is excessively soft that would occlude the airway, or in some way becoming impinged, where they can't breathe normally, that can be seen.

Q.    Were any of those risks factors unknown to you in 2004?

A.    No.

Q.    Have any of those risk factors emerged since 2004?

A.    We have been using them since 2004.  In fact, we have been using them since I started, I guess.

A.    Not necessarily, no.

Q.    Doctor, based on your experience and all the information that you had available to you in addition to the protocol you followed, could you surmise another reasonable explanation for Avry's death?

A.    I could not.

Q.    At trial there was some talk about a fall that occurred at Wal-Mart.  Are you familiar with that?

A.    I heard that story.

Q.    At some point were you made aware that Avry's car seat fell in the parking lot with her in it?

A.    If I remember correctly, at the time of the autopsy the officers brought the actual car seat and told us that story; yes.

Q.    Okay.  So you saw the car seat?

A.    One of my photographs have got the car seat in it.  I think that's the car seat we're talking about.

Q.    And what was your understanding of the Wal-Mart event at the time that you conducted the postmortem?

A.    The information we were told was the child was obviously alive and sitting in the car seat the way she was supposed to be.  She was strapped in

with her shoulder restraints and so forth, tied in.  The handle was extended like in the carrying position that you see parents carrying their kids in, and it was on top of the cart, and that the carrier slipped off the top of the cart and landed on the ground on the parking lot or sidewalk, I am not sure where, and hit the handle and the child remained inside in the webbing.  That's the story I was told, or in the restraint.  That's what I mean by webbing.

Q.    Were you given any information as to whether the child actually made contact with the pavement or not?

A.    We were told the child didn't make contact with the pavement because of the impending -- or the handle that was initially impacted and because of the webbing, or the restraints, the child was in.  And when they showed us the car seat, there actually is scuffing on the handle of the car seat where you can see it may have hit the pavement or something.

Q.    So your examination of Avry, you told us that you were able to ascertain the point of impact. Can you just using your own head show us where it would be?

A.    About 4 centimeters to the left of posterior midline, right about here (indicating.)

in fact, one of my photographs shows it, looks much like a jigsaw puzzle. And the tissue had been stripped away. And sectioning bone from that site I didn't really think would offer us very much. Admittedly if the dura had still been attached and we could align that all up, there would be some argument there of doing it, but in this case I didn't think it would provide anything, given the type of samples we were dealing with.

Q.    You also testified, and I believe today you backed up your previous testimony, that you are certain that the fall at Wal-Mart couldn't have caused the fracture?

A.    Right.

Q.    On what do you base that?

A.    Common sense.

MR. LARSON:  Thank you.  I have no other questions.

MS. KEARNS SABO:  I have no questions.

The COURT:  Thank you, Doctor.  You can step down.  Let's take a break, folks, about 15 minutes.

(Recess taken.)

THE COURT:  Back on the record in the Michael Ray Hansen versus State of Minnesota case. Michael is here.  Ms. Sabo is here on his behalf. Mr. Larson is here on behalf of the State of Minnesota.

82

STATE OF MINNESOTA )
) REPORTER'S CERTIFICATE
COUNTY OF BECKER )


I, LaVonne J. Richards, Court Reporter in and for the Seventh Judicial District, Detroit Lakes, Minnesota, certify that I am the reporter who was present in Douglas County District Court and reported the above-entitled matter.

This record is a true and correct transcript of my stenographic notes made at the time and place herein indicated.

Dated this 1st day of June, 2011.


_____

LaVonne J. Richards, RMR, CRR, CPE
Court Reporter