# COPY

1

STATE OF MINNESOTA                          IN DISTRICT COURT

COUNTY OF DOUGLAS                  SEVENTH JUDICIAL DISTRICT

Michael Ray Hansen,            )
                               )
            Petitioner,        )
                               )
     vs.                       )POST-CONVICTION RELIEF HEARING
                               )FILE NO. KX-04-1222
State of Minnesota,            )
                               )
            Respondent.        )

TRANSCRIPT OF PROCEEDING

        The above-entitled matter came on for hearing
before the Honorable Peter M. Irvine, Judge of the
District Court, in the Courthouse, in the City of
Alexandria, County of Douglas and State of Minnesota, on
the 8th & 11th days of April, 2011.

A P P E A R A N C E S

Ms. Bridget Kearns Sabo                FOR THE PETITIONER
Mr. James Nichols
Innocence Project of MN
1536 Hewitt Avenue
MS-D2205
St. Paul, MN   55104

Mr. Chad Larson                        FOR THE RESPONDENT
Douglas County Attorney
Douglas County Courthouse
305 8th Ave. West
Alexandria, MN   56308

     REPORTED BY LAVONNE J. RICHARDS - RMR, CRR, CPE

I N D E X

WITNESS:                                                    PAGE

**DR. ROBERT ROTHFEDER**

    Direct Examination by Ms. Kearns Sabo        7
    Cross-Examination by Mr. Larson              37
    Redirect Examination by Ms. Kearns Sabo      58
    Recross-Examination by Mr. Larson            63
    Redirect Examination by Ms. Kearns Sabo      64
    Recross-Examination by Mr. Larson            65

**DR. LINDSEY THOMAS**

    Direct Examination by Mr. Nichols            68
    Cross-Examination by Mr. Larson             146
    Redirect Examination by Mr. Nichols         162
    Recross-Examination by Mr. Larson           163

**CHRIS VAN EE, Ph.D.**

    Direct Examination by Ms. Kearns Sabo        98
    Cross-Examination by Mr. Larson             124
    Redirect Examination by Ms. Kearns Sabo     136

**DR. SUSAN ROE**

    Direct Examination by Mr. Nichols           165
    Cross-Examination by Mr. Larson             203

**ANDREW PEARSON**

    Direct Examination by Ms. Kearns Sabo       212
    Cross-Examination by Mr. Larson             221
    Redirect Examination by Ms. Kearns Sabo     231
    Recross-Examination by Mr. Larson           232

**DR. CAROLYN LEVITT**

    Direct Examination by Ms. Kearns Sabo       234
    Cross-Examination by Mr. Larson             263
    Redirect Examination by Ms. Kearns Sabo     269

**DR. JOHN PLUNKETT**

    Direct Examination by Mr. Nichols           271
    Cross-Examination by Mr. Larson             299

We will gather then, 1:30 in Courtroom C.

You can step down, Doctor.

**THE WITNESS**:  Thank you.

(Recess taken.)

**THE COURT**:  This is the case of Michael Ray Hansen versus the State of Minnesota.  Michael is present.  Ms. Sabo and Mr. Nichols are here on his behalf.  Mr. Larson is here for the State of Minnesota. We are proceeding this afternoon by ITV.

Ms. Sabo.

**MS. KEARNS SABO**:  Thank you, Your Honor. Mr. Hansen would call Mr. Chris VanEe.

**THE COURT**:  Sir, will you stand and raise your right hand, please?

**CHRIS VAN EE, Ph.D.**, a witness, called by the Petitioner, being first duly sworn, testified on his oath, as follows:

**THE COURT**:  Please be seated.  And state your name and spell your last name, please.

**THE WITNESS**:  My name is Chris Allen VanEe, last name is spelled V-A-N space E-E.

**THE COURT**:  Ms. Sabo.

**MS. KEARNS SABO**:  Thank you, Your Honor.

(via ITV)

the top of a cart in a car seat and you can land anywhere in the car seat and in some cases the head may not ever touch the ground.  In many cases it probably wouldn't touch the ground.  But it certainly is possible if the impact as the car seat rolls off the cart, if the impact is like this (indicating) then a head impact could occur that could result in an impact in the location of the fractures.

MS. KEARNS SABO:  Thank you.  I move to admit these exhibits, Your Honor.

THE COURT:  Mr. Larson.

MR. LARSON:  Your Honor, I have some relevancy concerns here.  What the doctor is showing -- what the picture is showing is that a dummy's head under these circumstances can touch a table.  So I am going to have to object on relevancy basis.

THE COURT:  Objection is overruled. They are received.

MS. KEARNS SABO:  Thank you, Your Honor.

Q.    (Ms. Kearns Sabo continuing)  Mr. VanEe, did you do other tests besides this positional test that you described?

A.    Yes, I did.

Q.    Could you describe those for us?

A.    The next step is I didn't want to damage

this car seat, the subject car seat, but I did want to look at is there some way we can understand dynamically, this is what we call quasi-static or static investigation, where it is under one gravitational force. It is not a fall. It is just positioning. And is it possible? If not, what part of the head would hit? The next step is to understand what may be happening more dynamically during a fall condition. So I did additional testing where I picked up, put the crash test dummy in a car seat that's in some ways similar to this car seat but in other ways very dissimilar. The main difference between the other car seat that I used in the second part of the testing is that it had a five-point restraint system. That means in this case we have shoulder belts coming down and then a buckle that connects right beneath, between the legs. We call that a three-point restraint. One, two, three points. The car seat that I was able to obtain --. I looked for another car seat like this and wasn't able to find one at the time. Occasionally they come up on Ebay and I can get a hold of one. I wasn't able to get one in time for this, but I went to the store and bought the current version from this company of this car seat, and it has a five-point restraint. What that means is that the shoulder belts come down and then you have -- you

still have the buckle in the middle between the legs but you also have the harness coming around on either side of the legs. And this offers some increased restraint to the child and keeps them in the seat potentially more snugly.

So with that car seat I put the child -- or put the crash test dummy in there, picked it up to heights that were consistent with the fall height from the shopping cart and dropped it. I think I did four or five drops to look at what types of head impacts can occur under those conditions.

Q.    And what was that test able to tell you?

A.    Well, the test was able to tell me that the head does, indeed, make contact with the ground, that that contact can produce forces that are fairly large. In those tests I was getting between 80 and a hundred G's of acceleration on the head. With a five-pound head 100 G's implies 500 pounds of force on the head. So these are pretty large forces that act upon the head during such a fall. And it also showed me that if I just took the dummy without the car seat and dropped it from that same height, based on previous testing I have done, the exposure would actually be greater. So with this particular car seat what I found is that the car seat with the five-point restraint could

supply some degree of safety to the child for this fall; however, if you loosen that restraint, or you switch the restraint to a three-point, and you had thick clothing, the effect of that five-point restraint and that increased propensity of the child to stay in the car seat would be lost. And I think you could have impacts that are certainly consistent or even greater than what I measured in my testing using a three-point restraint with a slightly lose harness.

Q.    So you could say, what I understand from that and correct me if I am wrong, that the force generated by a fall from that height in a car seat similar to the car seat that Avry was in was sufficient to cause a fracture; is that correct?

A.    It is consistent, yes. Based on what I looked at that would be a consistent outcome. It doesn't mean that would necessarily happen every time but it is certainly possible.

Q.    Is it possible in a scenario like this to say what would happen every time?

A.    No, you can't do that even with, under the best of circumstances with any type of biomechanical testing because every person is slightly different. And the best you can do is say are these results consistent or not? And in some cases you can get a little further

and say what is the probability of such an outcome for this exposure level.  But, you know, one person is in a 30-mile-per-hour crash and they walk away and another person is injured and disabled for life.  Some cases it is subtle differences between the crash or subtle differences between how they were seated or how they were restrained or it may just be one person's body is stronger than another, so there are a lots of factors that come into play.  But what you can do from a biomechanic standpoint is look at are these consistent or not?  And in some cases you can get a little further and say what is the probability of such an outcome.

Q.    So what your test could show is it was possible for Avry's head to hit the pavement if she fell upside down as had been described; correct?

A.    Yes.

Q.    And that the force from that fall was sufficient to cause the fracture if her head impacted?

A.    Well, my test for the second part of that, it would be the results from my testing as well as the research that is available on what types of falls and how far a fall needs to be to result in a skull fracture in children.  I have a publication specifically on that issue.  There are multiple other publications.  And falls greater than 32 inches onto a hard surface

like pavement in almost a very high percentage of those where you have a direct head contact from that fall height, you get fracture.

Q.    Do you know what the height was of this car seat when it fell?

A.    The child's head height would be 46 to 49 inches.

Q.    So that's well in excess of the 32 inches you just mentioned?

A.    That's correct.  The 32 inches comes from a study out of Germany by a researcher named Vetter.  And he dropped infant cadavers from 32 inches in height onto the backs of their head.  And when he dropped them, he dropped five onto concrete, five onto carpet and five onto linoleum.  And all 15 of those infant cadavers suffered skull fractures as a result of those 32-inch falls.  And those cadavers, the age range at time of death was between zero and one year of age.

**MS. KEARNS SABO:**  Thank you, Mr. VanEe. That's all I have.

**THE COURT:**  Mr. Larson.

**BY MR. LARSON**                              **CROSS-EXAMINATION**

Q.    Good afternoon, Doctor.  Can you hear me okay?

A.    I can.  Good afternoon to you.

STATE OF MINNESOTA    )
                      ) REPORTER'S CERTIFICATE
COUNTY OF BECKER      )


I, LaVonne J. Richards, Court Reporter in and for the Seventh Judicial District, Detroit Lakes, Minnesota, certify that I am the reporter who was present in Becker County District Court and reported the above-entitled matter.

This record is a true and correct transcript of my stenographic notes made at the time and place herein indicated.

Dated this 28th day of April, 2011.


_____

LaVonne J. Richards, RMR, CRR, CPE
Court Reporter