IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

ALFONSO RODRIGUEZ, JR.,   )
             )
   Petitioner,    )
             )
   v.       ) Criminal Case No. 2:04-cr-55
             ) Civil Case No.  2:11-cv-88
UNITED STATES OF AMERICA,  )
             )
   Respondent.   )

**UNITED STATES' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL EXPERT DISCOVERY**

Respondent, United States of America, moves the Court for an Order compelling

Petitioner to produce expert discovery.

**I.   Procedural History**

On October 17, 2011, Petitioner, Alfonso Rodriguez, Jr., filed a 334-page Motion

for Collateral Relief pursuant to Title 28 U.S.C. § 2255, accompanied by thousands of

pages of exhibits, asserting 20 enumerated claims of error.  (Doc. 752)  Petitioner claims

his conviction and death sentence were obtained in violation of his rights under the Fifth,

Sixth, Eighth, Tenth, and Fourteenth Amendments to the United States Constitution.

Petitioner's claims rely, in part, on allegations of ineffective assistance of counsel

wherein his trial experts failed to conduct adequate examinations into Rodriguez's mental

health.

Rodriguez's petition raises numerous mental health-related claims which involve

ineffectiveness regarding his mental health affecting all phases of the capital trial,

including guilt.  On July 13, 2012, Rodriguez filed a Motion to conduct "further testing related to Petitioner's impaired mental health."  The Court issued an Order on August 20, 2012, permitting Dr. Stephen Greenspan and Dr. David Lisak to conduct mental health evaluations of Alfonso Rodriguez, Jr.; to have an MRI with contrast completed to rule out the presence of Arnold-Chiari Malformation; and to have a blood sample submitted to conduct testing to rule out the presence of Fragile X Syndrome.  Since this Order, Rodriguez submitted himself to new examinations by his current mental health experts, and recently he underwent additional expert medical and mental health-related testing which rendered supplemental findings and opinions on Petitioner's behalf.

Petitioner claims that had trial counsel conducted a thorough investigation, with appropriate mental health experts properly deployed, they would have discovered that Rodriguez was insane at the time of the offense.  To that end, 2255 counsel retained Dr. Pablo Stewart,[1] who examined Petitioner and has concluded that at the time of the offense Rodriguez "was unable to appreciate the wrongfulness of his actions," and that Rodriguez suffers from an exceptionally severe case of post-traumatic stress disorder which can sometimes trigger "full-blown dissociative states."  Dr. Stewart discussed the crime with Rodriguez in arriving at his conclusion.  This conclusion goes much further than the mental health testimony at trial.  In fact, it goes to the question of legal guilt. Furthermore, Dr. Pablo Stewart recently submitted a Supplemental Declaration, dated

---

[1]*See* Declaration of Dr. Pablo Stewart, Ex. D-17, in Rodriguez's § 2255 Motion, and Supplemental Declaration of Dr. Pablo Stewart, February 15, 2013 (Doc. 851-2, pp. 97-98).

February 15, 2013, wherein he concluded that, "I wish to make clear that the bases underlying my opinion would also constitute mitigating factors under the Federal Death Penalty Act.  In my experience as a forensic mental health expert, my diagnosis of PTSD, and [Rodriguez's] life history, unquestionably mitigate the offense." (*See* Doc. 851-2, pp. 97-98).  "Even absent the diagnoses [sic] of PTSD, or my views that he was not guilty by reason of insanity, these factors - singularly or in combination - are the type of history that is routinely presented to mitigate an offense in the context of a capital case." (Id. at 98)  However, Petitioner has failed to disclose reports, notes, raw data, or other materials upon which he relies to support Dr. Stewart's expert opinion.

Rodriguez has also consulted the expertise of Dr. J. Arturo Silva,[2] who did a psychiatric evaluation of Rodriguez at the Federal Penitentiary in Terre Haute, Indiana, on September 13, 2011.  He, too, discussed the crime itself with Rodriguez and Rodriguez's mental state at the time of the crime.  Dr. Silva has provided a report and supplemental declaration indicating his opinion of Petitioner's medical and mental health-related status (id.), however, Petitioner has failed to produce the reports, notes, tests, or raw data from which Dr. Silva's opinions are derived.

In addition, Rodriguez claims he suffers from "severe cognitive impairments" which render him mentally retarded.  Rodriguez retained the services of Dr. Stephen

---

[2]*See* Declaration of Dr. J. Arturo Silva, Ex. D-20, in Rodriguez's § 2255 Motion; and Supplemental Declaration of Dr. J. Arturo Silva, M.D., Supplementing Report of Alfonso Rodriguez, February 25, 2013 (Doc. 851-2, pp. 100-104).

Greenspan,[3] who has concluded that "the evidence available at the time of his arrest indicates that Alfonso Rodriguez, Jr., was a person with mental retardation." On October 26, 2012, Dr. Greenspan conducted an in-person evaluation of Petitioner. He also had interviews of numerous other individuals conducted, which he relied upon and cited in his Supplemental Declaration. Dr. Greenspan rendered a Supplemental Declaration, dated February 25, 2013, as to the mental retardation of Alfonso Rodriguez, Jr., however, he has failed to provide the United States with the reports, notes, tests, and related raw data of his initial findings or the supplemental evaluation upon which Dr. Greenspan relies to support his opinion.

Since the original filing of his 2255 petition Rodriguez also obtained the expert services of Dr. David Lisak, a clinical psychologist and forensic consultant, who issued a Report on Childhood Sexual Trauma Affecting Alfonso Rodriguez, dated November 24, 2012. (*See* Doc. 851-2, pp. 5-24) Dr. Lisak conducted an examination and in-person interview of Petitioner on October 17-18, 2012. The basis of his evaluation was to determine whether Rodriguez suffered childhood sexual trauma, and if so, evaluate the impact of that trauma on his development, including the connection, if any, between that impact and the offense of which he has been convicted. Petitioner has failed to provide the United States with the reports, notes, tests, and raw data related to Dr. Lisak's examination and evaluation.

---

[3]*See* Declaration of Dr. Stephen Greenspan, Ex. D-19, in Rodriguez's § 2255 Motion and Supplemental Declaration of Stephen Greenspan, Ph.D., dated February 25, 2013 (Doc. 851-2, pp. 81-91).

Upon the filing on February 25, 2013, of Rodriguez's Notice of Filing (*See* Docs. 851, 851-1, and 851-2), which included a report of Dr. David Lisak, dated November 24, 2012 (Exhibit A); a Supplemental Declaration of Stephen Greenspan, Ph.D., dated February 25, 2013 (Exhibit B); Results of blood testing for Fragile X (Exhibit C); a Supplemental Declaration of Dr. Pablo Stewart, dated February 15, 2013 (Exhibit D); a Supplemental Declaration of J. Arturo Silva, dated February 25, 2013 (Exhibit E), and Results of MRI procedures of Mr. Rodriguez' head, neck, and spine, interpreted by Susan Koslow, MD (Exhibit F), the United States requested counsel to provide all audio and video, reports, notes, raw data, testing results, and data regarding the examinations.  On March 12, 2013, counsel informed the United States that they "will not agree to provide you [the United States] with our experts' notes or data at this time."  On March 21, 2013, Rodriguez's counsel reiterated the previous statement that they would not provide the above discovery.  Counsel indicated to the Court that the only items that existed were rough handwritten notes the doctors used to prepare their reports.  This was not entirely correct.  For instance, Dr. Greenspan's Supplemental Declaration itself indicates that at his direction a mitigation specialist interviewed numerous individuals who provided information used by him in arriving at his opinion.  *None of these interviews were provided as part of Dr. Greenspan's Supplemental Declaration* or in Petitioner's Notice of Filing on February 25, 2013.  (Emphasis added)

## II.    Independent Mental Health Examinations

On June 12, 2012, the United States filed a Motion for Psychiatric Exam - Independent Examinations as to Alfonso Rodriguez, Jr., requesting that its experts be permitted to examine Rodriguez on scheduled dates in July and August 2012. (Doc. 820) On July 13, 2012, opposing counsel filed a Motion to Establish Schedule for Parties to Complete Mental Health Evaluations and to Reset the Government's Time to File Response to 2255 Motion (Doc. 823).  It was within this motion that opposing counsel indicated it was going to seek permission to conduct further testing related to Petitioner's impaired mental health.  Opposing counsel stated, *"It would not make sense to have the government's experts conduct their evaluations, only to have Petitioner conduct additional testing thereafter.  The government's experts would inevitably want to consider Petitioner's new results, which would likely lead to a request by the government to conduct yet another round of evaluations."*  (Id. at para. 3) (Emphasis added)  On July 30, 2012, Petitioner filed an Unopposed Motion for an Order to Facilitate Additional Medical and Mental Health-Related Testing (Doc. 827).  Opposing counsels' motion (id.) indicated that they had proffered a number of reports from Rodriguez's mental health experts who had evaluated either Petitioner himself and/or documents related to his background and history[4].  As a result of the initial evaluations, two of Petitioner's experts (Dr. Silva and Dr. Greenspan) recommended in their initial reports that further testing be

---

[4]Opposing counsel referred to Exhibits to 2255 Motion, D-17 (Report of Dr. Pablo Stewart, M.D.), D-19 (Report of Dr. Stephen Greenspan, Ph.D) and D-20 (Report of Dr. Arturo Silva, M.D.).

conducted to determine the possible presence or absence of a number of conditions that could shed further and important light on Mr. Rodriguez's impaired mental health.  (*See* Doc. 827 at para. 2)  On August 20, 2012, this Court granted Petitioner's motion for additional testing, ordering, in part, *"The reports of the doctor(s) and the raw data upon which the reports are derived will be provided to counsel for Petitioner."*  (*See* Doc. 831 at C (sealed).) (Emphasis added)

The United States initially was inclined to oppose counsel's motion for additional and subsequent testing of Petitioner (Doc. 827), but ultimately agreed that allowing additional testing by opposing counsel, prior to the government's experts' examinations, would be time and cost efficient for all parties as the government's experts would "inevitably" consider Petitioner's new examination results.  The United States made an effort to avoid further, unnecessary, delay in the scheduling of subsequent experts' examinations, case deadlines, and related litigative proceedings when it agreed to opposing counsels' supplemental testing in this matter.  (*See* Doc. 823)

On February 25, 2013, Petitioner filed his Notice of Filing (*See* Docs. 851, 851-1, and 851-2), which included a report of Dr. David Lisak dated November 24, 2012 (Exhibit A); a Supplemental Declaration of Stephen Greenspan, Ph.D., dated February 25, 2013 (Exhibit B); Results of blood testing for Fragile X (Exhibit C); a Supplemental Declaration of Dr. Pablo Stewart, dated February 15, 2013 (Exhibit D); a Supplemental Declaration of J. Arturo Silva, dated February 25, 2013 (Exhibit E), and Results of MRI procedures of Mr. Rodriguez' head, neck, and spine, interpreted by Susan Koslow, MD

(Exhibit F).  The reports of the doctor(s), specifically the reports of Dr. David Lisak,

Dr. Stephen Greenspan[5], Ph.D., and Dr. Susan Koslow, did not include any testing results,

investigative reports, notes, or any of the raw data upon which their reports were derived.

As noted above, since the filing of Petitioner's Notice of Filing (Docs. 851, 851-1,

851-2), the United States has sought production of all of these notes, reports, and raw data

from opposing counsel.  The United States has now scheduled its experts' examinations

of Petitioner, and these materials are vital in the government's evaluations.

## III.    Argument

Petitioner recognizes that he has put his medical and mental health at issue and

may have waived his Fifth Amendment rights as to those issues, yet he still asserts that he

may object to the disclosure of his experts' medical and mental health-related reports and

raw data.  Rodriguez argues that the United States' request seeks premature discovery for

which it has not established good cause under Rule 6 of the Rules Governing § 2255

Proceedings.  He argues that it would be more appropriate for his experts' reports, notes,

---

[5]Dr. Greenspan indicates in his Supplemental Declaration that at his direction a mitigation specialist interviewed numerous individuals who provided information used by him in arriving at his opinion.  According to Greenspan's Declaration, "The Mitigation Specialist spoke with the following people who knew Mr. Rodriguez pre-18:  Delores Rodriguez (mother); Illena [sic] Noyes (sister); Sylvia D'Angelo (sister); Rosa Rodriguez (sister); Paco Rodriguez (brother); Belia Flores (aunt); Eva Mendes (family friend); Geraldo Chavez (cousin), Reymundo "Rey" Espinosa (friend).  The Mitigation Specialist also spoke with the following people who knew Mr. Rodriguez only post-18:  Jose Lopez (case manager at Stillwater prison); and Fred Waldon (former patient/prisoner at St. Peter).  *None of these interviews were provided as part of Dr. Greenspan's Supplemental Declaration*. (Emphasis added) (See Doc. 851-2, p. 7)

and raw data to be the subject of the general discovery process that has been contemplated earlier by both sides and the Court.

Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that the "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(b) provides that the party requesting discovery must provide reasons for that request.

The United States requests that its experts be permitted a thorough examination of Rodriguez. He has placed his medical and mental health status at issue in these proceedings to an even greater degree than he did at trial. Petitioner claims that his trial counsel should have raised the insanity defense, a challenge to his conviction, and that he is mentally retarded. As he has placed his medical and mental condition "in controversy," Fed. R. Civ. P. 35 (a)(1), the United States is entitled to mental health examinations of Rodriguez. The Court has previously ordered examinations to be completed. Since that initial order Rodriguez has submitted himself to examinations, and supplemental examinations, by his new experts. At trial the United States' experts were permitted to conduct independent examinations of Rodriguez to rebut his experts in mitigation. Certainly Rodriguez is relying on his new experts to support his trial and mitigation investigation claims of ineffective assistance of counsel. The United States should be permitted to have its new experts conduct independent, thorough examinations of Rodriguez as well.

The United States has scheduled Michael Welner, M.D., a forensic psychiatrist, and James D. Seward, Ph.D., a psychologist and neuropsychologist, to complete examinations of Rodriguez on June 26-28 and July 10-12, 2013, respectively. However, it is imperative that the United States' experts have access to Petitioner's relied-upon experts' reports, notes, testing, and raw data prior to their examinations of Petitioner.[6] The United States needs the requested expert reports and supporting materials in order to prepare a proper Answer to Rodriguez's Petition. His experts have opined Rodriguez suffered from certain mental health impairments both at the time of the offense and at the time of trial. The United State's experts cannot prepare to properly examine Rodriguez and determine any necessary testing until they receive the full reports, interviews, test results, and work papers from Rodriguez's experts.

Non-disclosure of such materials operates to disadvantage the United States and its experts by precluding any meaningful analysis of these medical and mental-health related issues prior to the United States' examinations. Moreover, it places the United States in the hindered position of not being able to conduct its investigation of medical and mental health-related allegations until well after its Answer is filed and the "general" discovery process begins. Postponing production of Petitioner's experts' discovery will cause yet another delay and may, in fact, lead to further need for additional examinations, testing,

---

[6]During the time of the original trial, defense counsel provided all of their testing, notes, and raw data to the United States prior to the United States' experts completing their examinations of Rodriguez.

10

and reports to be filed with the Court.  A delay of production of expert discovery affects the procedural, financial, and time-efficient economy of the case.

Rule 6 does not purport to limit the inherent authority of this Court regarding discovery.  "Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court."  Bracy v. Gramley, 520 U.S. 899, 909, 117 S.Ct. 1793 (1997).  During collateral proceedings, courts may order discovery when they conclude "that it is necessary . . . in order that a fair and meaningful evidentiary hearing may be held so that the court may properly 'dispose of the matter as law and justice require.'"  Harris v. Nelson, 394 U.S. 286, 300 (1969).  It lies within this Court's inherent power to grant the production of expert discovery at this time for the limited purpose of use in the government's medical and mental health-related examinations of Petitioner.  The expert discovery sought also serves to protect the United States' statutory right to a fair opportunity to rebut Petitioner's expert evidence.  Moreover, it is not enough that the United States be supplied with expert "declarations" which support Petitioner's allegations relating to his medical and mental-health status.  The United States is entitled to the reports, notes, testing, and raw data used to support any of Rodriguez's experts' findings and conclusions as they relate to Petitioner's medical and/or mental health and the allegations regarding trial counsels' ineffective assistance.   The United States' experts cannot properly prepare for or administer appropriate testing or examinations, or give a fair rebuttal opinion, without having access

11

to each piece of information the Petitioner's experts were given or relied upon to consider in their assessments and subsequent opinions of Petitioner.

Under Rule 5(a) of the Rules Governing § 2255 Proceedings, the government is presently required to file an answer that "must address the allegations in the motion." Contrary to Rodriguez's position, the United States' obligation is not limited to determining whether the § 2255 Motion states a prima facie case for relief. Opposing counsel invalidates their commitment to make the process of Petitioner's independent mental evaluations by the United States' experts efficient and thorough when they insist the government cannot have access to their experts' reports and raw data until the discovery process is fully underway. Moreover, such insistence only further delays the scheduling of examinations and the deadline for the United States' answer to the habeas corpus petition, and, ultimately, any pending evidentiary hearing in this matter. Rodriguez's habeas corpus petition repeatedly refers to, and relies upon, issues related to his medical and/or mental health and trial counsels' ineffective assistance as it related to such issues. (*See* Doc. 753, Claims II(D)(2) (alleging ineffective assistance of counsel to present guilt-phase insanity defense), IV (alleging ineffective assistance of counsel for failing to properly investigate and present mitigating evidence in penalty phase), and V (alleging Petitioner is a person with intellectual disability, i.e., mental retardation, and that counsel failed to investigate and present the penalty-phase defense)).

Petitioner's newest expert, Dr. David Lisak, opined the Petitioner suffers certain childhood trauma which impacted his development, including the connection between

12

that impact and the offense for which he has been convicted; however, Dr. Lisak failed to provide the relevant reports, notes, raw data, or supporting materials which underlie his opinion. (*See* Doc. 851-2, Dr. David Lisak)  Petitioner's expert Dr. Stephen Greenspan opined in his Supplemental Declaration that, although he cannot conclude Petitioner suffers Intellectual Disability (ID), it is his opinion from new information obtained that Petitioner meets the pre-18 criteria for a diagnosis of ID.  (*See* Doc. 851-2, Dr. Stephen Greenspan)  Petitioner's expert Dr. Arturo Silva has asserted that neuroimaging data supports a diagnosis of a neurodevelopmental malformation.  (*See* Doc. 851-2, Dr. Arturo Silva)  Obviously, the Petitioner's experts' opinions are heavily relied upon as relate to his medical and mental health status in this proceeding.  These experts provide opinions which weigh on the outcome of these issues in this case.  However, as it currently stands, the bases to Petitioner's experts' opinions are unknown.  Any statements or interviews of Petitioner have not been provided.  Any statements of other individuals relied upon in forming their opinions have not been provided.  The testing, if any, and the method of administration are equally a mystery.  The raw data derived from examinations are unknown.  Fundamental fairness requires that the United States have access to Petitioner's experts' reports, including notes, testing, and raw data materials, which are derived from Petitioner's medical and mental health-related examinations and evaluations.  These particular documents are essential for the United States' experts' preparation and administration of their independent examinations of Petitioner.  For the

13

United States to be in a position to effectively respond to Rodriguez's Petition, it should be permitted access to the same materials upon which he relies to make his arguments.

Moreover, Petitioner's refusal to produce the materials referred to herein has already prejudiced the United States' preparation in this regard and continues to deny the United States a fair opportunity to examine, cross-examine, and rebut Petitioner's evidence. At this point in the proceedings there is no risk of prejudice to Petitioner by ordering him to produce the materials specified herein for the limited purpose of the government's examinations in this matter.

For the reasons described above, the request for expert discovery is warranted and appropriate. Accordingly, pursuant to Rule 6 of the Rules Governing Section 2255 Cases, Rules 26-37 of the Federal Rules of Procedure, Rules 15-17 of the Federal Rules of Criminal Procedure, and for the reasons stated herein, the United States respectfully requests this Court grant a hearing on this motion and grant its motion for leave to conduct this specified discovery.

Dated April 2, 2013.

LYNN C. JORDHEIM
Attorney for the United States Acting under
Authority Conferred by 28 U.S.C. § 515

By:    /s /Keith W.  Reisenauer
KEITH W. REISENAUER
Assistant United States Attorney
Quentin N. Burdick United States Courthouse
655 First Avenue North - Suite 250
Fargo, ND  58102-4932
(701) 297-7400
N.D. Bar Board ID No. 03885
Attorney for United States

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

ALFONSO RODRIGUEZ, JR.,        )
        )
      Petitioner,      )    **Certificate of Service**
        )
   v.      )    Criminal Case No. 2:04-cr-55
        )    Civil Case No.  2:11-cv-88
UNITED STATES OF AMERICA ,    )
        )
     Respondent.    )

I certify that on April 13, 2012, the following document:

UNITED STATES' MOTION TO COMPEL EXPERT DISCOVERY and
UNITED STATES' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL EXPERT DISCOVERY

was filed electronically with the Clerk of Court through ECF.

Dated April 2, 2013.


/s/ Charlotte E. Berg

_____

Charlotte E. Berg
Office of the United States Attorney