FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    07/17/2006

Connie Bush, previously known as Connie Cushing, a Corrections and Community Services Officer, was contacted at the St. James Hotel, Red Wing, Minnesota. Bush was advised of the identity of Special Agent (SA) Frank R. Brostrom, Federal Bureau of Investigation (FBI), St. Louis, Missouri, as well as, Assistant United States Attorney (AUSA) Michael A. Reilly and AUSA Carrie Costantin from the office of the United States Attorney, Eastern District of Missouri (EDMO), at St. Louis, Missouri. After being advised of the purpose of the interview Busch provided the following information:

Bush is familiar with former Minnesota Department of Corrections (MDC) Inmate, Alfonso Rodriguez Jr. from the Stillwater, Correctional Facility (SWCF). Bush recognized photographs of Rodriguez provided by AUSA Reilly. Bush also recognized Rodriguez from the photographs shown by the news media regarding his arrest in connection with the murder of Victim Dru Sjodin.

Bush advised that she was previously deposed by the defense council for Alfonso Rodriguez and in reference to the trial in which Rodriguez is charged with murder.

Bush has a Bachelor of Arts degree that she earned from St. Cloud Minnesota University in 1985. Bush has degrees in Criminal Justice and Sociology. After graduating from college Bush participated in an internship with the Hennepin County Department of Community Corrections. Bush also worked for the Canterbury Downs Half-Way House which is a private, non-profit entity. In April of 1986 Bush became a part-time, on-call perimeter officer for MDC.

On July 9, 1986, Bush became a, "Corrections Officer - I" at the Oak Park Heights Correctional Facility (OPH), the new maximum security prison at the time. Bush worked at OPH until August 1989, when she was promoted and transferred to the Stillwater Correctional Facility (SWCF).

---

Investigation on    07/14/2006    at  Red Wing, Minnesota

File #  7A-SL-64106                                Date dictated  07/16/2006

by   SA Frank R. Brostrom
195frb02.302

F07450 This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US EXHIBIT-12-1

FD-302a (Rev. 10-6-95)

7A-SL-64105

Continuation of FD-302 of ___Connie Bush_____ ,On _07/14/2006_ , Page ___2___

Rodriguez was an inmate at OPH during the time that Bush was employed as a corrections officer at the prison. Bush recalled that she was initially responsible for the frequent "pat-down" searches of prisoners at the institution, to include Rodriguez. Bush advised that during the "pat-down" searches Rodriguez would look away and did not make eye contact.

At the time Rodriguez was in the Honor Unit at the prison. The Honor Unit was in Complex Number 7 and had the least amount of secure walls surrounding the area.

Bush recalled that Rodriguez never talked to anyone at the prison unless it was necessary. Rodriguez was considered to be a loner who appeared to want simply to do his required tasks and finish his time. Later when Bush became a Utility Officer, covering all the inmate units she observed that Rodriguez conformed to all the rules and regulations required of inmates.

In August of 1989 Bush was promoted to Case Worker at the Stillwater Correctional Facility (SWCF).

Bush was referred to an Annual Report she prepared regarding Rodriguez on December 12, 1989 (Bates Number 11722). Bush noted that in the report she summarized that Rodriguez had an excellent work record in the Office Machine Repair, as a press worker. After reading the remainder of the report Bush advised that she would have obtained the information from previous summary reports, records and from an interview with Rodriguez. Bush opined that Rodriguez conformed to the rules and had no disciplinary reports at the time.

Bush categorized Rodriguez as normal in his environment with no mental issues to be addressed. Bush is certain of Rodriguez's normal mental state as she would have been advised or aware of any problems as the Case Worker.

Bush advised that she had a large number of inmates assigned to her case load and she did not have time to see each inmate on a regular basis. If an inmate did not have problems or did not send a "Kite" she may not speak with them more than once per year, regarding their progress.

F07451

US EXHIBIT-12-2

FD-302a (Rev. 10-6-95)

7A-SL-64105

Continuation of FD-302 of ___Connie Bush_____ , On _07/14/2006__ , Page ___3___

     Bush recalled that Rodriguez had no problems communicating during his interview. Bush noted that on April 7, 1988 a Program Review Team assembled for a program mandate review. The purpose of the review was to determine the treatment programs Rodriguez needed to complete prior to his release from prison. Bush advised that according to the copies of the MDC documents displayed for her review, Rodriguez was mandated to complete the Sex Offender Program, when at the appropriate time and when an opening in the program was available. Bush opined that inmates were sometimes reluctant to enter the Sex Offender Program (SOP) due to the elements of the Restrictive Programming (RP). Bush opined that if Rodriguez refused to participate in SOP, he would not be transferred from Stillwater.

     Bush explained that RP inmates are not eligible for any minimum security prisons. As part of the RP inmates are required to be released into a half-way house with community notification and have other stringent restrictions placed on them.

     Rodriguez could not be forced to enter the SOP because he was sentenced prior to 1992. Bush is not aware of any laws or rules that could have instituted disciplinary action against Rodriguez for refusal to complete SOP.

     In 1992, disciplinary confinement was instituted for inmates who refused to complete SOP when mandated. Under the 1992 rules, an inmate would be placed in segregation, and lose good time, at an exponential rate of 30, 60, then 90 day terms. This would continue until the inmate reached his expiration date or completed SOP.

     Bush did not have a discussion with Rodriguez as to whether or not he committed the 1980 sex offense. Bush did not have the case file long enough for this type of discussion as related to his mandated completion of the SOP.

     Bush was aware that Rodriguez had a Restricted Residential Mandate and a Restricted Programming and Probation Mandate.

     Bush summarized Rodriguez' as an ideal inmate who did his time and did it well. Rodriguez was never inappropriate toward the many female employees of the prison or toward Bush.

F07452

US EXHIBIT-12-3

FD-302a (Rev. 10-6-95)

7A-SL-64105

Continuation of FD-302 of ____Connie Bush_____ , On 07/14/2006 , Page ___4___

       Bush recalled that at the deposition with Rodriguez' defense council, she was asked if she thought Rodriguez could continue to be an ideal inmate as he was during his previous incarceration.  Bush told the attorney, "yes," but that no one could ever know whether he could simply "snap."  Bush further stated that Rodriguez may exhibit a different behavior if he were sentenced to life imprisonment.  Previously, Rodriguez looked forward to being released which caused him to be on his best behavior.  If he was sentenced to life imprisonment, he could have a different attitude toward prison life.

F07453

FU-08223

US EXHIBIT-12-4