FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    07/21/2006

        Steve Ergen, Case Manager, Minnesota Department of
Corrections (MDC), Moose Lake Correctional Facility (MLCF), was
contacted at the AmericInn and Suites Motel, Highway 31, Moose
Lake, Minnesota.  Ergen was advised of the identity of Special
Agent (SA) Frank R. Brostrom, Federal Bureau of Investigation
(FBI), St. Louis, Missouri, as well as, Assistant United States
Attorney (AUSA) Michael A. Reilly and AUSA Carrie Costantin from
the office of the United States Attorney, Eastern District of
Missouri (EDMO), at St. Louis, Missouri.  After being advised of
the purpose of the interview Ergen provided the following
information:

        Ergen has a Bachelor of Arts Degree and a Master's Degree
in Criminal Justice. Ergen was initially hired by MDC in 1988, as a
Corrections Officer at the St. Cloud Medium Security Correctional
Facility for men.  In 1993 Ergen was promoted to Case Manager at
MLCF.  Rodriguez was one of the inmates in Ergen's case load at
MLCF.  Ergen recognized Rodriguez from the media coverage regarding
his arrest on charges that he kidnaped and murdered Dru Sjodin.

        Ergen advised that during the time that Rodriguez was
part of his case load, he rarely saw Rodriguez in person.  This is
due to the fact that Rodriguez did not cause any problems and was
considered a quiet inmate.  In addition, Ergen's office was in a
different housing unit area from the unit where Rodriguez was
housed.

        Ergen recalled that in cases where inmates do not have
issues they may only be observed, in person, once per year during
the annual review.  Ergen noted that Rodriguez' case file was
"unremarkable."

        Ergen was provided with a copy of an Annual Review, dated
April 5, 1995 and related to Rodriguez (Bates Number 11716).  Ergen
noted that Rodriguez had not transferred to MLCF until February 23,
1994.  Ergen also noted that in the Annual Report he prepared
regarding Rodriguez he included information that Rodriguez had
above average work evaluations related to his prison industry job
as a Press Operator at Stillwater.  Ergen advised that he would

---

Investigation on    07/13/2006    at  Moose Lake,   Minnesota

le #  7A-MP-64106                                    Date dictated   07/20/2006

by   SA Frank R. Brostrom
     194frb02.302

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

US EXHIBIT-13-1

X-ERGEN-00003

FD-302a (Rev. 10-6-95)

7A-MP-64106

Continuation of FD-302 of ____Steve Ergen_____, On _07/13/2006_ , Page ___2____

have obtained this information from a previous Annual Report prepared by Rodriguez' Case Manager at the Stillwater Correctional Facility (SWCF). Ergen noted that after arriving at MLCF Rodriguez maintained the same type of job and continued to receive good work evaluations.

Ergen advised that Rodriguez was a functional person with no apparent mental or psychological problems. Ergen advised that his opinion was based on his limited contact with Rodriguez. During this time Rodriguez conformed to the rules of the correctional facility and did not have any psychological issues. Ergen opined that these are the reasons why he did not have much contact with Rodriguez.

Rodriguez did not have issues with female Correctional Officers or administrators as it would have been noted in the past and present Annual Reviews. Ergen advised that the Annual Review summaries include information included in past Annual Reviews, the inmate Initial Report and the Program Review Team's (PRT) recommendations. According to Ergen these sources of information serve as a history for each subsequent Annual Report drafted.

In the Annual Report dated April 5, 1995 (Bates Number 11716) the PRT encouraged Rodriguez to follow through with the Initial Team's recommendation and pursue Sex Offender Treatment and a chemical dependancy evaluation. This was information that the PRT obtained from Rodriguez' Initial Report which originally made this recommendation.

In a subsequent Annual Review, dated April 17, 2001 (Bates Number 11709), and signed by Ergen as the Case Manager, it was noted that Rodriguez had not been given any Program Directives by the PRT and that programming was again recommended.

Ergen advised that the Housing Review Unit would have wanted a psychological review in the event that Rodriguez qualified for the Projected Release Date (PRD) or prior to the request and application for Civil Commitment.

Ergen noted that his summary indicated that the Disciplinary Confinement Law legislation did not apply to Rodriguez and that he (Rodriguez) would not be penalized for failure to participate in the Sex Offender Program.

US EXHIBIT-13-2