FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    07/20/2006

      Christopher Esty, Minnesota Department of Corrections, Lino Lakes Correctional Facility (LLCF) was contacted at the Embassy Suites Hotel, St. Paul, Minnesota. Esty was advised of the identity of Special Agent (SA) Frank R. Brostrom, Federal Bureau of Investigation (FBI), St. Louis, Missouri, as well as, Assistant United States Attorney (AUSA) Michael A. Reilly and AUSA Carrie Costantin from the office of the United States Attorney, Eastern District of Missouri (EDMO), at St. Louis, Missouri.  After being advised of the purpose of the interview Esty provided the following information:

      Esty earned a Bachelor of Arts (BA) Degree in Sociology, with a minor is psychology.  Esty began as a Corrections Officer at the Minnesota Department of Corrections (MDC), Stillwater Correctional Facility (SWCF) on November 1, 1978.  Esty remained at SWCF in that capacity for approximately three (3) years.

      In March of 1982, Esty was transferred to the Oak Park Heights Correctional Facility (OHCF).  At the time OH had just opened as a new multiple level, Maximum Security facility.  Esty earned the rank of Sergeant as a Corrections Officer and was later promoted to Case Worker.  In 1991 Esty was promoted to supervisor over Case Workers at OHCF.  In 1995 or 1996 Esty became a Program Director which included responsibilities as a Cell Hall Director in charge of security for over 50% of the living units at OHCF. During this time Esty was also involved in the Education Department at OHCF.  Esty was assigned to OHCF for approximately seventeen (17) years.

      On December 1, 1999, Esty was transferred to the newly opened Rush City Correctional Facility (RCCF).  This prison was a Level IV, double occupancy prison.  In 1999 the MDC prisons changed the security ratings to a measurement of Level I, being the lowest security level, to Level V, rated as the maximum level of security.

      In July 2002 Esty was transferred to the MDC Central Office as the Director of Classification and Transportation.  Esty held this position for approximately one year. In July 2003, Esty was transferred to the Lino Lakes Correctional Facility (LLCF) as a Program Director where he has remained for the past two years.

---

Investigation on    07/12/2006    at  St. Paul, Minnesota

Ic #  7A-MP-64106                                  Date dictated  07/20/2006

by    SA Frank R. Brostrom
    193frb04.302

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US EXHIBIT-14-1

X-ESTY-00003

FD-302a (Rev. 10-6-95)

7A-MP-64105

Continuation of FD-302 of ___Christopher Esty_____ , On _07/12/2006__ , Page __2'__

       Esty is familiar with former Minnesota Department of Corrections (MDC) Inmate, Alfonso Rodriguez Jr. and is aware of the current charges against Rodriguez for kidnaping and murder of Victim Dru Sjodin.  Esty recalled that he was one of the former Case Workers assigned to inmate Rodriguez and that Esty had completed previous Annual Reviews for Rodriguez in 1983.  The Annual Review is a summary of he inmate's progress over the last twelve (12) months.

       Esty recalled Rodriguez as a quiet, non-problematic inmate during the time that Esty had contact with him (Rodriguez).

       In reviewing previous report associated with Rodriguez in 1983 and 1984 (Bates Numbers 11739-11742) Esty recalled that Rodriguez had indeterminate sentences of 0 to 15 years and 0 to 20 years.  This meant that Rodriguez would serve two-thirds (2/3) of his sentence prior to being eligible for parole. Rodriguez' failure to participate in mandated Sex Offender Programs (SOP) would not affect his parole date.  Disciplinary actions would be the only factor that could change his parole date.  After August 1, 1991, Disciplinary Confinement legislation was instituted and resulted in inmates receiving penalties for failure to participate in mandated SOPs.  The newer Disciplinary Confinement rules did not affect offenders who had indeterminate sentences.

       Esty advised that the Projected Release Date (PRD) was set by the Parole Board and provides an opportunity for the inmate to be released on parole, prior to the expiration date.  According to Esty the Expiration Date is the date representing the inmate's imprisonment for "every day" of his sentence.

       Esty advised that the Progress Review Team (PRT) could change an inmate's PRD within sixty (60) days of admission or within sixty (60) days prior to release.  In the event that the Case Manager or PRT received additional information which could affect the PRD, the inmates PRD could also be reviewed for adjustments.  The PRT included a committee consisting of the Case Manager and at least two (2) other prison administrators.  The PRT is then responsible for making recommendations to the Hearings and Release Department (Parole Board).

US EXHIBIT-14-2

X-ESTY-00004

FD-302a (Rev. 10-6-95)

7A-MP-64105

Continuation of FD-302 of ___Christopher Esty_____ , On _07/12/2006_ , Page ___3___

      Esty opined that Rodriguez was moved from SWCF to OHCF in May 1983 due to the fact that OHCF had a SOP and due to the length of Rodriguez' sentence. Esty further opined that OHCF as a new facility had inmate beds to fill, thus creating a need for transferring inmates such as Rodriguez.

      Esty recalled that Rodriguez was "report free" during the time that Esty was familiar with the inmate. In further reflection Esty recalled that Rodriguez may have had only one "minor report" during the entire time serving in MDC. Esty explained that inmates who were "report free" and without disciplinary action for a period of six (6) months received a reduction in security classification. This would allow for an inmate to eventually be transferred to a lower security level prison in Minnesota. This did not apply to sex offenders like Rodriguez because they could not be transferred to a prison with a classification level lower than Medium.

      Rodriguez could have been eligible for release on a date prior to his Expiration Date if he agreed to certain mandates, to include treatment in a SOP. Esty noted that Rodriguez denied that he was in need of SOP treatment, because he felt that he did not commit the sex offense for which he was convicted and sentenced. Under the terms of the sentence Rodriguez received in 1980, he could not be forced to complete SOP treatment. If he chose not to participate in the SOP he would be required to serve to his Expiration Date.

      In order to receive the possibility of parole date prior to the Expiration Date, Rodriguez would have been required to participate in SOP treatment and upon release been mandated conditions for placement in a half-way house as well as mandated community notification as a sex offender.

      Esty advised that at the time Rodriguez would have been an inmate, he would have received one (1) day of "Good Time" for every two days served in prison. Esty added that for every three (3) days of segregation an inmate fails to earn "Good Time." Esty advised that segregation time cannot cause an inmate to serve time beyond the Expiration Date.

      Esty was directed to review a copy of a MDC summary dated December 29, 1983 and signed by Esty. Esty advised that the Significant Offense Characteristics summary would have been obtained through Esty's review of the original Pre-Sentence

US EXHIBIT-14-3

X-ESTY-00005

FD-302a (Rev. 10-6-95)

7A-MP-64105

Continuation of FD-302 of ____Christopher Esty_____ , On 07/12/2006 , Page ___4___

Investigation (PSI) prior to Rodriguez being sentenced on charges of Aggravated Rape, Assault and Attempted Kidnaping. The information contained in the summary would have been taken from the PSI, the original criminal complaint from any previous convictions

Esty advised that the Case Management summaries included information that Rodriguez received an indeterminate sentence with a criminal history range of III (from a maximum of VI) and a severity rating of VIII (out of a maximum of X).

Referring to the Annual Report prepared by Esty, related to Rodriguez dated December 28, 1984 (Bates Numbers 11736-11738) Esty provided several observations. Esty advised that at the time of the above Annual Report, Rodriguez remained "Report Free" and had not lost any "Good Time." Esty recalled that Rodriguez lost his prison industry job in the Food Services Unit due to a minor incident. Esty recalled that he was at the hospital with his young child on the day of the incident at the prison. Esty recalled that all of the Food Service workers walked off the job in protest of unfair working conditions. The inmates were ordered to immediately return to work or they would lose their prison industry jobs. The inmates were further advised that upon returning to work, they would lose ten cents (.10) per hour. Esty advised that Rodriguez was the only "hold-out" and refused to return to work even after all the other inmates returned.

Rodriguez lost his prison industry job and later obtained employment as part of the prison yard maintenance crew. Rodriguez later found a job in the prison laundry. This was considered as a preferred job because inmates are allowed to return to their cell to watch television between the washing and drying cycles. Inmates are free to do what they please after the laundry task is completed. The inmates were aware that this job included less work, requiring the least amount of time, and offers a full day's pay. Inmates who were awarded the laundry job obtained the position through positive behavior in the prison.

Inmates were required to meet certain criteria prior to being released from prison. This policy allowed inmates to receive "good time" and the possibility of early release upon completion of certain mandated programs such as the Sex Offender Program (SOP). Rodriguez was sentenced to the Expiration Date because Rodriguez had refused, from the beginning, to participate in the SOP treatment. The Parole Board assigned Rodriguez to his Expiration Date and a copy was sent to Rodriguez for his review.

US EXHIBIT-14-4

FD-302a (Rev. 10-6-95)


7A-MP-64105


Continuation of FD-302 of ____Christopher Esty_____ , On 07/12/2006___ , Page ___5___


   Esty was referred to a copy of the Unit Case Coordinator, Classification Notes (Bates 11922) and dated January 4, 1984.  Esty signed the Classification Notes as the Chairman of the three man committee.  The summary indicates that Rodriguez "denies sex offender treatment needs."  This was also noted in the Annual Review, "Team Comments" dated 12/29/1983 (Bates Number 11739).

   Esty recalled that Rodriguez was normal in behavior and was a good inmate.  Esty advised that Rodriguez was not dis-functional in his behavior as he did not act irrationally or unusual in any way.  Rodriguez followed the rules of the prison and did not have problems with persons in authority to include female administrators.  Rodriguez conducted his job assignments very well and had excellent evaluations.

US EXHIBIT-14-5