IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALFONSO RODRIGUEZ, JR.,<br><br>　　　　Defendant. | Case No. 2:04-cr-55<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR WITHDRAWAL, SUBSTITUTION, AND APPOINTMENT OF COUNSEL** |

The United States of America, by Christopher C. Myers, United States Attorney

for the District of North Dakota, and Keith W. Reisenauer, First Assistant United States

Attorney, opposes Alfonso Rodriguez, Jr.'s Motion for Withdrawal, Substitution, and

Appointment of Counsel (DKT 1011), specifically the proposed substitution and

appointment of an entirely new team of defense attorneys - the Federal Community

Defender's Office for the Eastern District of Pennsylvania (FCDO), to replace

Rodriguez's current habeas corpus defense team.  The United States opposes Petitioner's

motion to withdraw, substitute or appoint new counsel and submits this response in

opposition to Petitioner's latest motion.

Dru Sjodin was kidnapped from the Columbia Mall in Grand Forks, North Dakota,

on the afternoon of November 22, 2003.  Sjodin's body was found on April 17, 2004, in a

ravine outside of Crookston.  On May 11, 2004, a federal grand jury for the District of

North Dakota returned a one-count Indictment that charged Petitioner Alfonso

Rodriguez, Jr. with kidnapping Dru Sjodin and transporting her from North Dakota to

Minnesota for the purpose of sexual assault, and otherwise, resulting in the death of Dru

Sjodin (18 U.S.C. § 1201(a) (1)).  Rodriguez pled not guilty.  On August 30, 2006, a federal jury found Rodriguez guilty as charged in the Indictment.  On September 22, 2006, the jury determined Rodriguez should be sentenced to death.

On February 8, 2007, following the denial of Rodriguez's motion for a new trial, United States v. Rodriguez, 2007 WL 466752 (D.N.D. Feb.12, 2007), the district court formally sentenced Rodriguez to death. (DKT 652)  Rodriguez appealed the judgment to the Eighth Circuit of Appeals.  The Court of Appeals affirmed the conviction and sentence.  United States v. Rodriguez, 581 F.3d 775 (8th Cir. 2009), *reh'g and reh'g en banc denied* (Feb. 11, 2010).  The United States Supreme Court denied Rodriguez' petition for a writ for certiorari.  Rodriguez v. United States, 131 S.Ct. 413 (Oct. 18, 2010).

Even before the United States Supreme Court weighed in on the case, Attorney Joseph Margulies moved this Court seeking personal appointment on behalf of himself and the Office of the Minnesota Federal Public Defender to represent Petitioner in "all available post-conviction remedies, including but not limited to the investigation, preparation, and prosecution of a motion for relief under 28 U.S.C. § 2255."  (DKT 739) On July 15, 2010, Attorney Margulies sought this Court's appointment based, in part, on the following reasons:

1. As the Court may be aware, the Administrative Office of the U.S. Courts sponsors the Federal Capital Habeas Project. Ruth Friedman is the Director of this project.  Recently, Ms. Friedman wrote a letter of introduction to the Court in which she explained that her Project identifies qualified counsel for § 2255 proceedings, whom they recommend for appointment by the courts.  In this instance, Ms. Friedman contacted Katherian Roe, the Federal Defender for the

District of Minnesota, to determine whether her office could handle the case. Ms. Roe indicated that two attorneys – Katherine Menendez and Andrew Mohring – could be charged with that responsibility, and that the office would be willing to accept the appointment on the condition that learned counsel joins their team.

2.    Ms. Friedman then contacted me. I agreed to accept appointment as learned counsel.

3.    Ms. Friedman has graciously described our qualifications. Both Katherine and Andrew are brilliant lawyers blessed with the rare combination of stellar credentials and relevant experience. Katherine has been a criminal defense lawyer for thirteen years and has worked as an Assistant Federal Defender for eleven. She has a strong appellate practice, including about 100 cases in the Eighth Circuit and forty oral arguments. Of particular importance here, Katherine has been counsel on 15-20 habeas cases arising from both state and federal convictions and is thus familiar with the specialized jurisprudence that governs post-conviction proceedings. Andrew has been a criminal defense lawyer for twenty-three years, most of them as an Assistant Federal Defender in Minnesota. He has represented clients in a range of federal criminal cases – including homicides – at all stages of the criminal process, including trial, appeal, and habeas. He has also litigated approximately a dozen (non-capital) § 2255 cases. He second-chaired a winning case in the United States Supreme Court, United States v. R.L.C., 503 U.S. 391 (1992), has argued over twenty cases in the Eighth Circuit, and is an adjunct professor of law at University of Minnesota Law School.

4.    As for me, I am presently a clinical professor of law at Northwestern University School of Law. I have been a capital habeas attorney for a very long time, more than 20 years, and have represented a great many death row inmates in state and federal post-conviction proceedings. I have handled habeas cases across the country, including the Eighth Circuit where I am a member of the bar. For ten years, I lived and worked in Minnesota, where I represented criminal defendants at trial, on appeal, and in state and federal post-conviction proceedings. It was during my many years in Minnesota that I met Andrew and Katherine, with whom I have collaborated in other cases. Before my time in Minnesota, *I lived in Austin, Texas, where I represented death row inmates in state and federal habeas corpus litigation. I still have a number of friends and colleagues in Texas, which will no doubt come in handy in this case, since I*

3

> *anticipate the mitigation investigation will take us there.*  I am often asked to speak about habeas corpus and the death penalty.  Finally, I was counsel of record in both <u>Rasul v. Bush</u>, 542 U.S. 446 (2004), a habeas case involving detentions in Guantanamo Bay, and <u>Munaf v. Geren & Geren v. Omar</u>, 553 U.S. 674 (2008), a habeas case involving detentions in Iraq.

* * *

> 7.    As for Mr. Rodriguez's wishes, Ms. Friedman and her colleagues at the Federal Capital Habeas Project have met with Mr. Rodriguez, who affirms that he wants to pursue post-conviction remedies and that he would like counsel appointed on his behalf.  Because the Office of the Federal Defender has dedicated funding, their representation will be at no cost to the Court (e.g. no expert fees, attorney fees or travel expenses).  Mine will be at the rate established by the Criminal Justice Act for capital cases.

(DKT 739 paras. 1-4, 7) (Emphasis added.)

On this same date, this Court issued an Order (DKT 740) granting Attorney Margulies' Motion to Appoint Counsel for Post-Conviction Proceedings. The Court ordered that the Minnesota Federal Public Defender's Office, specifically Ms. Menendez and Mr. Mohring, along with Mr. Margulies, be appointed as counsel for Rodriguez in this habeas corpus litigation, replacing his original defense team, Richard Ney and Robert Hoy.

On October 17, 2011, Rodriguez, through this defense team, filed a 334-page Motion for Collateral Relief (DKT 752), accompanied by thousands of pages of exhibits, asserting 20 enumerated claims of error. Rodriguez claims that his conviction and death sentence violated his right under the Fifth, Sixth and Eighth, Tenth and Fourteenth Amendments to the United States Constitution.

4

Thereafter, on January 10, 2012, Attorney Michael Wiseman of Philadelphia, Pennsylvania filed a Motion for Leave to Appear Pro Hac Vice (DKT 798) seeking to also be a part of the defense team and represent Petitioner Rodriguez in this 2255 litigation.  In his motion, Mr. Wiseman noted that he has over 30 years of trial and post-conviction experience which includes complex criminal defense, capital defense and civil rights litigation.  His experience includes prior work at the Federal Defender's Office for the Eastern District of Pennsylvania, Defender Association of Philadelphia, and Capital Habeas Corpus Unit.  Mr. Wiseman was also a member of the Death Penalty Working Group – Appointed by Director, Administrative Office of the United States Courts, as one of fifteen lawyers from around the country to advise the federal government on formulation and implementation of strategies for death penalty defenses.  On January 18, 2012, this Court issued an Order (DKT 800) granting Attorney Wiseman's Motion for Leave to Appear Pro Hac Vice and become part of the habeas corpus team of defense attorneys for Alfonso Rodriguez.  To date, Rodriguez has had four court-appointed habeas corpus attorneys, Joseph Margulies, Katherine Menendez, Andrew Mohring, and Michael Wiseman representing him in this § 2255 litigation.

Nearly *six years after requesting appointment of counsel and five years after* filing his Motion under 28 U.S.C. § 2255 For Collateral Relief, To Vacate, Set Aside, Or Correct Sentence, and For a New Trial" (DCD 752), and subsequent years of extensive investigation, expert examinations, and numerous habeas corpus hearings, Rodriguez now moves this Court seeking the substitution and appointment of an entirely new legal team.  Rodriguez does not move this Court seeking replacement of counsel based upon a

deterioration of attorney-client relationship, allegations of counsels' misrepresentation or because he is dissatisfied with his attorneys' representation and performance in this § 2255 litigation.  ("To warrant substitute counsel [for this reason], a defendant must show justifiable dissatisfaction with appointed counsel."  United States v. Sayers, 919 F.2d 1321, 1323 (8th Cir. 1990)).  Instead, Rodriguez's counsel moves to withdraw, substitute and seek new appointment of counsel based on the inconvenience this case has apparently caused his current court-appointed 2255 counsel.

The recent motion argues that "[P]ersonnel changes at the Minnesota FPD and changes in the staffing formulae for the federal public defender system prevent the office from continuing to perform this role.  In light of these developments, the Minnesota FPD and the two learned counsel jointly requested the assistance of the FCDO.  The North Dakota FPD would continue to serve as local counsel and also supports the FCDO's appointment." (DKT 1011 at para. 3)  Rodriguez asserts that the North Dakota FPD lacks a capital habeas unit and the substantial in-house experience of the FCDO.  Attorneys Margulies and Wiseman support the FCDO's appointment in light of the office's expertise and experience, and they would withdraw if the request were to be granted . . . "Finally, Mr. Rodriguez's case has required substantial investigative work in Texas; because the FCDO has numerous cases pending there, the remaining investigation could be completed in a cost-effective manner." (Id. at para. 5)

Although the substitution of new counsel is committed to the sound discretion of the district court, United States v. Mentzos, 462 F.3d 830, 839 (8th Cir. 2006).  The right

6

to appointed counsel does not include an absolute right to counsel of defendant's choosing.  Id.

Generally, "[a]ppointment of new counsel is warranted only when the defendant demonstrates justifiable dissatisfaction with this appointed attorney"  United States v. Barrow, 287 F.3d 733, 737 (8th Cir. 2002), and in determining whether to appoint new counsel, the district court must balance several factors, including "the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of a crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job."  Id. at 738.

Title 28 United States Code § 2255 governs claims by prisoners in custody arguing the sentence imposed was in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack.  Section 2255(g) provides that the "court may appoint counsel".

There is a limited right to counsel for a petitioner created by the Rules Governing Section 2255:

Rule 8(c) of the Rules Governing Section 2255 Cases states:

> If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.  The judge must conduct the hearing as soon as practicable after giving the attorneys adequate time to investigate and prepare.  These rules do not limit the appointment of counsel under § 3006A at any stage of the proceeding.

The Rules Governing Section 2255 Cases were adopted by the United States Supreme Court on April 26, 1976, pursuant to the Rules Enabling Act, 28

7

U.S.C. § 2072. Congress ratified the Rules with minor amendments on July 8, 1976. (Citation omitted) The limited right to counsel for petitioners created by Rule 8(c) is therefore not a constitutional right (neither the Fifth nor Sixth Amendment rights to counsel apply to habeas petitioners), nor is it a purely statutory right (Congress merely ratified the rule pursuant to its authority under the Rules Enabling Act). Rather, the Rule 8(c) right to counsel is a non-constitutional procedural right.

Any right to counsel on a petition pursuant to Title 28 United States Code § 2255 is a creature of statute. Title 18 United States Code § 3599(2) entitles indigent defendants to the appointment of counsel in capital cases. See 18 U.S.C. § 3599(a)(2) (appointment of counsel in a death penalty case); see generally Ryan v. Gonzales, 133 S. Ct. 696, 702-03 (2013). Congress has not, however, conferred capital habeas petitioners with the right to counsel of their choice. The statute contemplates that a court may "replace" appointed counsel with "similarly qualified counsel. See 18 U.S.C. § 3599(e).

In assessing requests for substitution of counsel under § 3599, the Supreme Court applies an interests-of-justice standard. See Martel v. Clair, 132 S. Ct. 1276, 1284-1287 (2012). Significantly, the "interest of justice" includes recognition of the danger that substitution of counsel will result in "abusive delay." Id. at 1286-87. As the Supreme Court explained:

> [T]he "interests of justice" standard contemplates a peculiarly context-specific
> inquiry. So we doubt that any attempt to provide a general definition of the
> standard would prove helpful. In reviewing substitution motions, the courts of

appeals have pointed to several relevant considerations. Those factors may vary a bit from circuit to circuit, but generally include:  the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict) (Citations omitted).

Martel, 132 S.Ct. at 1287.

Rodriguez presents no evidence that there has been a dissatisfaction or breakdown with his counsel, that he is at odds with them, that they have abandoned him, or that a disabling conflict of interest exists.  The given reason for withdrawal is convenience of the Minnesota Federal Public Defenders Office, Mr. Margulies, Mr. Wiseman and the FCDO.

The "interests of justice" factors are derived from the considerations courts of appeals use in reviewing substitution motions.  Martel at 1287.  The Supreme Court recognized that "[p]rotecting against abusive delay *is* an interest of justice."  Id. at 1286. Substitution motions may become mechanisms to defer enforcement of a death sentence contrary to the goals of the Antiterrorism and Effective Death Penalty Act of 1996. (AEDPA)  Therefore, substitution motion decisions by the Court should consider issues of timeliness.  Id.  The delay in seeking substitution and the potential for abuse might be valid considerations in many cases.  Christeson v. Roper, 135 S.Ct. 891, 895 (2015).  See also, Hunter v. Delo, 62 F.3d 271, 274 (8th Cir. 1995)(citing "the need to thwart abusive delay" in affirming the denial of a habeas petitioner's substitution motion).

In light of the foregoing, the United States submits that Rodriguez's counsel, specifically Mr. Margulies and Mr. Wiseman and the Minnesota Federal Public

Defender's Office have failed to show that their withdrawal from his § 2255 case is in the interest of justice. The only given reason for withdrawal is that "[p]ersonnel changes at the Minnesota FPD and changes in the staffing formulae for the federal public defender system prevent the office from continuing to perform this role." Presumably, this Court appointed said counsel to provide subject matter expertise for the duration of the case knowing full well the exhaustive nature of death penalty petitions. Both counsel and the Minnesota Federal Public Defender's Office requested appointment by this Court. They informed the Court of that in their original motions asking to be appointed. Learned counsel, Mr. Margulies and Mr. Wiseman, make no explanation for their intention to withdraw in favor of the FDCO. One might surmise that they do not want to take on the responsibilities previously entrusted to the Minnesota Federal Public Defender's Office or that they feel that the FDCO would bring one too many "learned" lawyers into the case or a disguised delay tactic. In any event, the interest of justice standard contemplates the needs of the client, not the comfort and desires of his lawyers. A just reason for substitution, a wholesale substitution at that, has not been provided.

If the Court grants the withdrawal of the Minnesota Public Defenders Office, it makes more sense to, deny the withdrawal of Mr. Margulies and Mr. Wiseman as no reason for their withdrawal has been made at all. Learned counsel set forth their vast experience and expertise in death penalty and 2255 case and the Court has recognized this expertise. They are capable of carrying on this already five years in the making 2255 to its conclusion rather than to recommence the entire enterprise with all new lawyers who have no familiarity with the litigation, no relationship with the defendant, and no

10

valid argument about bringing efficiency to the case based on their tenuous connections to Texas.  This case may require investigation in Texas, but the FDCO is still in Pennsylvania, the client is in Indiana, the crime scene covers two states in the upper Midwest, the courthouse is in Fargo, and any depositions will presumably take place at the convenience of the deponents, to the extent possible.  Furthermore, Mr. Margulies earlier asserted to this Court that he has the important "Texas connection" as he previously resided in Austin, Texas, where he represented death row inmates and he "still [has] a number of friends and colleagues in Texas, which will no doubt come in handy in this case, since I anticipate the mitigation investigation will take us there." (DKT 739, para. 7)

However, if the Court deems it in the interest of justice to provide additional counsel to Rodriguez upon the withdrawal of the Minnesota Federal Public Defenders Office, to avoid unnecessary delay occasioned by a complete revision of Rodriguez's team, the Court could appoint some local attorney to supplement Wiseman and Margulies if they cannot litigate the case on their own.  Presumably, qualified counsel could be found in South Dakota or Missouri, which have capital punishment at the state level.  Alternatively, if the case's center of gravity has truly shifted to Texas, it would be hard to imagine an area of the country with more qualified capital attorneys.

Finally, even if the Court should find the requested relief within the interests of justice, it should take steps to avoid delay in this, already protracted, litigation.  To the extent the FDCO requires time to learn the case, learned counsel, Mr. Margulies and

11

Mr. Wiseman, should continue with the litigation until the new attorneys are able to take over fully presumably after the evidentiary hearings that have already been scheduled for November 15, 2016, and January 17, 2017.  Learned counsel have been working towards those scheduled hearings for years.  The Court should maintain the current schedule for those evidentiary hearings, including any discovery, which the Court previously continued at counsel's request, as counsel have presented no justification for doing otherwise and the interests of justice standard contemplates the government's interest in efficiency.

Further, the Court, if it grants counsel's withdrawal request, should – out of an abundance of caution – take a personal Eighth Amendment waiver from the defendant regarding any delay occasioned by a change of counsel.  While the government maintains that the death penalty passes Eighth Amendment muster despite postponements occasioned by pre-execution litigation, it recognizes that judges, including two members of the Supreme Court, believe that the slow pace of capital litigation could render the penalty unconstitutional.  See Glossip v. Gross, 135 S. Ct. 2726, 2764-65 (2015) (Breyer, J., dissenting); see generally Jones v. Davis, 806 F.3d 538, 553 (9th Cir. 2015) (*reversing the grant of a § 2254 writ premised on dysfunction and delay in California's system of capital punishment litigation*).  To avoid such a claim in this case, and to satisfy itself that substitution is in the interests of justice, the Court should therefore take the defendant's personal waiver of any Eighth Amendment claim.

Last, but not least, victims are far too often forgotten in the weighing of interests in criminal cases. "[C]rime victims have legitimate interests in the outcomes of criminal

cases, as well .…Yet they will frequently run up against a system that … pays virtually no attention to their concerns." D. Beloof, P. Cassell, & S. Twist, Victims in Criminal Procedure 3 (2d ed. 2006).

That is certainly true of Rodriguez's briefs in this case. Between the briefs submitted by Rodriguez and supporting background therein, there is much discussion of the interests of convenience, yet the interests of the victims are barely, if ever, mentioned.

For the direct victim, murder is the ultimate finality. Dru Sjodin never breathed the air of freedom again after November 22, 2003, because Petitioner chose to take her life. The families of homicide victims are also victims of the crime, but for them the crime is not yet completely final. The proposition of this Court granting Petitioner's Motion to Withdrawal, Substitute and Appoint New Counsel will, likely, further postpone this § 2255 litigation for at least another year or more, and burden Dru Sjodin's family further. To date, Rodriguez' § 2255 litigation has been painstakingly pending for nearly 5 years. There is nothing cost-effective in delaying Rodriguez's proceeding due to an unwarranted substitution and appointment of new counsel.

## CONCLUSION

The United States, therefore, respectfully requests that Rodriguez's Motion for

Withdrawal, Substitution, and Appointment of Counsel be denied.

Dated:   March 25, 2016.

CHRISTOPHER C. MYERS
United States Attorney


By:  /s/ *Keith W. Reisenauer*
KEITH W. REISENAUER
Assistant United States Attorney
Quentin N. Burdick United States Courthouse
655 First Avenue North - Suite 250
Fargo, ND  58102-4932
(701) 297-7400
ND Bar Board ID No. 05434
Keith.Reisenauer@usdoj.gov
Attorney for United States