IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

UNITED STATES OF AMERICA,         :
:
        Plaintiff/Respondent,    :
                   :    Criminal Case No. 2:04-cr-55
vs.                          :
:
ALFONSO RODRIGUEZ, JR.,      :
:
        Defendant/Petitioner.    :

---

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF FORENSIC CLAIMS**

Petitioner, Alfonso Rodriguez, through undersigned counsel, respectfully submits the following supplemental authority, which became available after the legal memoranda were submitted: *Henning v. Commissioner of Corrections*, --- A.3d ---, No. 20137, 2019 WL 2494763 (Conn. June 14, 2019) (opinion attached as Exhibit 1).[1]  In *Henning*, the Supreme Court of Connecticut granted habeas relief and remanded for a new trial because one of the government experts testified at trial that a red smudge on a towel at the crime scene tested positive for blood, when in fact the test results showed the substance was not blood. *Id.* at *12. The facts of *Henning* mirror the facts raised by Petitioner regarding the testimony of Dr. McGee.  At Petitioner's trial, government expert Dr. McGee testified that autopsy swabs tested positive for the presence of semen, when in fact the p30 results documented in Steven Fischer's bench notes prove that semen was absent.

Shawn Henning and his co-defendant, Ralph Birch, were convicted of felony murder

---

[1] The companion case *Birch v. Commissioner of Correction*, --- A.3d. ----, No. SC 20136, 2019 WL 2494788 (June 14, 2019) involving Henning's co-defendant Ralph Birch was decided on the same day and relied on the same reasoning as *Henning*.

during what appeared to be a burglary gone wrong. *Henning,* 2019 WL 2494763, at *2. The victim was found in a pool of blood in the hallway of his home with twenty-seven stab wounds, a severed jugular vein, and blunt force trauma to the head. *Id.* Bloody footprints were found near the victim's body and throughout the house. Blood spatter and smears covered the walls around the body almost to the ceiling. *Id.* Blood was also found in the victim's bedroom and on the victim's belongings, and several items from the victim's bedroom were missing. *Id.* There were also towels hanging in the upstairs bathroom, and on one of the towels there was a red smudge. *Id.* at *5.

The police recovered the car that Mr. Henning and Mr. Birch were driving on the night of the murder, and it was clear from the condition of the car that it had not been cleaned. *Id.* at *3. No blood or other evidence tying Mr. Henning or Mr. Birch was found in the car. *Id.* Police also recovered the clothing Mr. Henning and Mr. Birch were wearing on the night of the murder, and no blood was found on their clothing. *Id.* at *4-5.

The prosecution called Medical Examiner Henry Lee to explain how it was possible for the two defendants to have committed this murder without getting any blood on their clothes or in their car. One of the explanations Dr. Lee offered was that he had tested the red smudge on the bathroom towel and it tested positive for blood, so the defendants may have cleaned off any blood before leaving the residence. The prosecutor referenced the "blood stained towels" twice in his closing, encouraging the jury to "[r]emember also the bloody towel in the bathroom. It gave them an opportunity to wash or have some access to that sink." *Id.* at *6.

In reality, "no such test [of the red smudge] had been conducted, and further, a test of the substance conducted in connection with the present case proved negative for blood." *Id.* At trial, neither the prosecutor nor the defense attorney corrected Dr. Lee's testimony because at the time

neither realized it was incorrect.  *Id.* at \*5.  During the initial habeas proceedings, the court determined that Dr. Lee's testimony was mistaken rather than intentionally false, and Petitioner did not challenge that conclusion upon appeal.  *Id.* at \*1 n.3.

The Connecticut Supreme Court held that, as a matter of due process the prosecutors should have known Dr. Lee's testimony was false whether or not they actually knew it, and allowing such testimony to go uncorrected denied Henning a fair trial:

> It is inarguable that Lee, as the representative of the state police forensic laboratory, should have known that the bathroom towel had not been tested for blood.  He, like any such witness, had an affirmative obligation to review any relevant test reports before testifying so as to reasonably ensure that his testimony would accurately reflect the findings of those tests.  To conclude otherwise would permit the state to gain a conviction on the basis of false or misleading testimony even though the error readily could have been avoided if the witness merely had exercised due diligence; such a result is clearly incompatible with the principles enunciated in *Brady* and its progeny.

*Id.* at \*10.  The court went on to explain that this knowledge must be imputed to the prosecutor: "Lee's incorrect testimony also must be imputed to the prosecutor who, irrespective of whether he elicited that testimony in good faith, is deemed to be aware of any and all material evidence in possession of any investigating agency, including, of course, the state police forensic laboratory." *Id.*

Finally, the court observed that the proper standard to determine materiality was whether the government could establish beyond a reasonable doubt that the false testimony was immaterial.  *Id.* at \*8.  Contrary to the finding of the lower court, the court held that this standard applies whether or not the witness committed perjury: " . . . it is well established that this stringent materiality test applies when a prosecutor elicits testimony that he or she knows or should know to be false, *regardless of lack of intent to lie on the part of the witness*." *Id.* at \*9 (internal quotation marks omitted).  The court held that Henning met the materiality standard in

large part because the prosecutor referred to the "blood" on the towel during his closing arguments to bolster his case against Mr. Henning. *Henning,* WL 2494763, at *2.

The circumstances surrounding the forensics of Mr. Rodriguez's case are strikingly similar to those in *Henning*. Dr. McGee, a medical examiner testifying on behalf of the prosecution, testified that laboratory testing indicated the presence of semen on the swabs taken from Ms. Sjodin's cervix and vagina. In reality, other testing conducted on the government's behalf showed that the swabs taken from Ms. Sjodin could not contain any semen. *See* ECF Doc. 1083 (Petitioner's Br.), at 47-57; ECF Doc. 1101 (Reply Br.), at 11-13. In *Henning* and the present case, the prosecution knew or should have known that its forensic testimony was materially false. ECF Doc. 1101 at 14-18.

In *Henning*, the prosecution failed to correct false testimony, then capitalized on the falsity in closing argument. In Mr. Rodriguez's case, the government referenced the false testimony with the inflammatory language of "rape fantasy" or "fantasizing about rape" no fewer than ten times in its selection phase closing. Trial Tr. 8662, ln 7-8; 8663, ln 5-6; 8663 ln 13; 8688, ln 22; 8689, ln 1-2; 8689, ln 13-14; 8690, ln 2-3; 8690, ln 19-20; 8694, ln 19; 8707, ln 17. ECF Doc. 1083 (Petitioner's Br.), at 23. And in both cases, the prosecution has failed to demonstrate that the error is harmless beyond a reasonable doubt, as it must. ECF Doc. 1083 at 60-73; ECF Doc. 1101 at 18-25.

For the reasons herein and in Petitioner's previous submissions, Petitioner respectfully respects that this Court grant post-conviction relief.

Respectfully submitted,

/s/ ANNIE FISHER
ANNIE FISHER
ERIC MONTROY
JAHAAN SHAHEED

FEDERAL COMMUNITY DEFENDER
FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
Capital Habeas Unit
601 Walnut Street
Suite 545 West
Philadelphia, PA 19106
Tel: 215.928.0520
Annie_Fisher@fd.org
Joseph_Luby@fd.org
Eric_Montroy@fd.org
Jahaan_Shaeed@fd.org


Dated August 27, 2019
Philadelphia, PA

5

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2019, the foregoing document was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

Drew Wrigley
drew.wrigley@usdoj.gov

Melissa H. Burkland
melissa.burkland@usdoj.gov

/s/ Annie Fisher
*Counsel for Defendant-Petitioner*